# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL DEVAULT, *in his individual and official capacity as Macomb Intermediate School District Superintendent;* MICHAEL BAYER *in his individual and official capacity as Board Member of Lakeview Public Schools;* JOHN BERNIA, *in his individual and official capacity as Superintendent of Warren Consolidated Schools;* MARK BLASZKOWSKI, *in his individual and official capacity as Superintendent of Roseville Community Schools;* ANDREW BRODIE, *in his individual and official capacity as Superintendent of Flat Rock Community Schools;* JOSEPH CANDELA, *in his individual and official capacity as Superintendent of Huron Intermediate School District;* DAVEDA COLBERT, *in her individual and official capacity as Superintendent of Wayne RESA;* TERRY DANGERFIELD, *in his individual and official capacity as Superintendent of Lincoln Park Public Schools;* DANIEL DOMBROWSKI, *in his individual and official capacity as Board Member of Lakeview Public Schools;* SHELLY DuCHARME, *in her individual and official capacity as Superintendent of Bay Arenac ISD;* BENJAMIN EDMONDSON, *in his individual and official capacity as Superintendent of Romulus Community Schools;* DEREK FISHER, *in his individual and official capacity as Superintendent of Garden City Public Schools;* MARK GREATHEAD, *in his individual and official capacity as Superintendent of Woodhaven-Brownstown School District;* KENNETH GUTMAN, *in his individual and official capacity as Superintendent of Oakland Schools;* SCOTT HARDY, *in his individual and official capacity as Board Member of Traverse City Area Public Schools;* PAUL HUNGERFORD, *in his individual and official capacity as Superintendent of Gratiot-Isabella RESD,* PETER KUDLAK, *in his individual and official capacity as Superintendent of Van Buren Public Schools;* ALAN LATOSZ, *in his official and individual capacity as Superintendent of Algonac Community Schools;* TARA MAGER, *in her individual*

Hon.

Case No.

## CLAIM OF UNCONSTITUTIONALITY

## EMERGENCY RELIEF REQUESTED BY NOVEMBER 30, 2025

*and official capacity as Superintendent of Northwest Education Services;* ROBBYN MARTIN*, in her individual and official capacity as Board Member of Lakeview Public Schools;* DEDRICK MARTIN*, in his individual and official capacity as Superintendent Kalamazoo RESA;* DIANE MARTINDALE*, in her individual and official capacity as Superintendent of Birch Run Area Schools;* ANGIE MCARTHUR*, in her individual and official capacity as Superintendent of Eastern Upper Peninsula Intermediate School District;* JASON MELLEMA*, in his individual and official capacity as Superintendent of Ingham Intermediate School District;* DOUGLAS MENTZER*, in his individual and official capacity as Superintendent of Trenton Public Schools;* STEPHEN MCNEW*, in his individual and official capacity as Superintendent of Monroe County Intermediate School District;* ROBERT MONROE*, in his individual and official capacity as Superintendent of Utica Community Schools;* GREGORY NYEN*, in his individual and official capacity as Superintendent of Marquette-Alger RESA;* ANDREA OQUIST*, in her individual and official capacity as Superintendent of Livonia Public Schools;* KARL PAULSON*, in his individual and official capacity as Superintendent of Lakeview Public Schools;* TODD ROBINSON*, in his individual and official capacity as Superintendent of Romeo Community Schools;* PAUL SALAH*, in his individual and official capacity as Superintendent of Huron Valley Schools;* JOHN SEARLES*, in his individual and official capacity as Superintendent of Midland County ESA;* ZACK SEDGEWICK*, in his individual and official capacity as Superintendent of Marquette Public Schools;* ANDREW SHAW*, in his official capacity as Superintendent of Monroe Public Schools;* BRENDA TENNISWOOD*, in her individual and official capacity as Superintendent of St. Clair County RESA; and* JOHN VAN WAGONER II*, in his individual and official capacity as Superintendent of Traverse City Area Public Schools,*

Plaintiffs,

v

STATE OF MICHIGAN, MICHIGAN DEPARTMENT
OF EDUCATION, and STATE SUPERINTENDENT
FOR PUBLIC INSTRUCTION, in her official capacity,

      Defendants.

---

Scott R. Eldridge (P66452)
Ahmad A. Chehab (P75560)
Eftiola Greco (P83874)
Elizabeth Munoz-Smith (P87945)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
*Attorneys for Plaintiffs*
123 W. Allegan St., Suite 200
Lansing MI 48933
eldridge@millercanfield.com
chehab@millercanfield.com
greco@millercanfield.com
munoz-smith@millercanfield.com

---

## VERIFIED COMPLAINT FOR EMERGENCY DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

There is no other pending or resolved civil action in any US District Court arising out of the same transaction or occurrence alleged in this Verified Complaint.  However, a related State complaint has been filed in the Michigan Court of Claims.

## **INTRODUCTORY STATEMENT**

1.     In the wake of the 2021 Oxford High School tragedy, the Michigan Legislature sought to restore public confidence and strengthen school safety through new funding measures.  Yet, in trying to address those concerns, the Legislature imposed an unconstitutional condition on local school districts', intermediate school districts', and school officials' acceptance of that funding.

2.     As enacted, Section 31aa(9) of the State School Aid Act of 1979 (2025 PA 15), Mich. Comp. Laws §§ 388.1601 *et seq*., which took effect October 7, 2025, requires districts, intermediate districts, nonpublic schools, and the Michigan Schools for the Deaf and Blind (hereinafter "School District(s)")  seeking essential state funding for student mental health and school safety to "affirmatively agree to waive *any privilege* that may otherwise protect information from disclosure in the event of a mass casualty event." (Emphasis added) (herein referred to as the "Privilege Waiver").

3.     Under this provision, Michigan's School Districts and their dedicated officials, including Plaintiffs, are forced to make an impossible choice: either forfeit hundreds of thousands—or even millions—of dollars essential for student safety and mental health, or surrender fundamental constitutional rights through a vague, overbroad, and coercive blanket waiver of "any privilege" with unknown limitation.

4.     Section 31aa(9) suffers from multiple, independent constitutional defects.

1

5.     First, it is unconstitutionally vague, failing to give School Districts, and school officials who run them, fair notice of what legal privileges they would have to waive, under what circumstances, and for how long, to access funds under Section 31aa, thereby violating substantive due process principles under the Fourteenth Amendment to the United States Constitution.

6.     Second, the provision imposes an unconstitutional condition by leveraging essential public funds in exchange for the waiver of fundamental individual rights, further violating substantive due process principles and the constitutional privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

7.     Although the Legislature's intent to fund school safety and student mental health initiatives is laudable, its attempt here is constitutionally infirm because of the Privilege Waiver provision, which should be declared unconstitutional, enjoined, and severed from Section 31aa.

## BACKGROUND

### The State School Aid Act Section 31aa Funding

8.     Section 31aa of the State School Aid Act provides funding to Michigan school districts, intermediate school districts, and nonpublic schools for student mental health and school safety initiatives.

9. Section 31aa outlines two distinct types of funding[1]:

a. Non-Competitive Per-Pupil Grants (Subsection 2): Distributed on an equal per-pupil basis to all districts, intermediate districts, and nonpublic schools that opt in and agree to receive funding. These payments are to be made by December 31, 2025.

b. Competitive Grant Programs: Two separate competitive grant pools for:

   i. School Resource Officers (Subsection 4): Competitive grants to support districts, intermediate districts, and nonpublic schools in hiring school resource officers.

   ii. Mental Health Staff (Subsection 5): Competitive grants to support districts, intermediate districts, and nonpublic schools in hiring staff to support student mental health.

10. The Michigan Department of Education ("MDE") has identified permissible uses of the non-competitive per-pupil grant funds (Subsection 2) to include the hiring or contracting of mental-health professionals such as school psychologists, social workers, counselors, and nurses; the implementation of evidence-based screening tools and behavioral-health technology platforms; professional development and collaboration among school personnel, families, and community partners; and physical-safety measures such as threat-assessment training, coordination with law enforcement, and infrastructure upgrades including secure vestibules, cameras, and emergency-response systems. These appropriations

---

[1] For more information, *see* 31aa FAQ – 2025-2026 (Fiscal Year 26) MDE, *available at*: https://www.michigan.gov/mde/-/media/Project/Websites/mde/ohns/31aa-FAQ-FY26.pdf?rev=da1450a6948e4b63bc37751f42c5eec8&hash=FF6D883C6A058E2317F6545FEF139996

provide essential resources that directly affect the safety and well-being of students and staff.[2]

11.     As a result, Plaintiffs cannot realistically forgo participation in the Section 31aa program without suffering immediate and substantial harm to their ability to provide safe and supportive learning environments.

### The Mandatory Privilege Waiver

12.     Section 31aa(9) provides in relevant part:

To receive funding under this section, a district, an intermediate district, a nonpublic school, or the Michigan Schools for the Deaf and Blind must agree to be subject to a comprehensive investigation, **must affirmatively agree to waive any privilege that may otherwise protect information from** disclosure in the event of a mass casualty event, and must agree to comply with a comprehensive investigation.

Mich. Comp. Laws § 388.1631aa(9) (emphasis added).

13.     Section 31aa(9) was enacted as part of Senate Bill 166 of 2025, which became Public Act 15 of 2025, the State School Aid omnibus appropriations bill for the 2025–26 fiscal year.

14.     When coupled with the overly vague and broad definition of "mass casualty event" in Section 31aa(12)(a) (see below), the Privilege Waiver is overly vague such that it violates the due process protections under the U.S. Constitution.

---

[2] 31aa Opt-in Form Template, MDE, *available at*: https://www.michigan.gov/mde/-/media/Project/Websites/mde/Grant-Resources/31aa-Opt-In-Template-FY26.pdf?rev=a7433c604a724c45adf38b7c6da06868&hash=116AFD7F91DDDF5757CFFB0B423ACD41 (pp. 2-3).

15. The statute does not define "any privilege," which seemingly encompasses common law, statutory, and constitutional privileges.

16. The statute broadly defines "mass casualty event" to include any event occurring on school grounds or at a school-sponsored event that results in:

(i) Significant injuries to not fewer than 3 individuals.

(ii) An incident resulting in fatalities.

(iii) An incident that exceeds the normal resources for emergency response available in the jurisdiction where the incident takes place.

(iv) An incident that results in a sudden and timely surge of injured individuals necessitating emergency services.

Mich. Comp. Laws § 388.1631aa(12)(a).

17. The combined vagueness and breadth of the phrases "any privilege" and "mass casualty event" render the scope of the purported waiver effectively limitless and unknowable. The statute does not define which privileges are encompassed—whether attorney-client, work product, deliberative process, statutory confidentiality, or even constitutional testimonial protections—nor does it specify whose privileges are affected, the School District's or those of individual employees. Likewise, the definition of "mass casualty event" relies on elastic, subjective terms such as "significant injuries" and "timely surge," offering no objective boundary for when the waiver is triggered.

18. Similarly, the phrase "an incident resulting in fatalities" contains no numerosity requirement or causal nexus to school operations. The provision, therefore, could arguably be triggered by a single tragic incident, such as a building

defect or collapse that causes the deaths of multiple workers on school property, a bus accident involving students or staff, or a severe weather event leading to multiple casualties on school grounds.

19.     The result is a statutory scheme that sweeps so broadly and indistinctly that no reasonable official could discern the conduct required to comply or the rights forfeited by participation, leaving the provision void for vagueness under substantive due process principles.

20.     The statute contains no temporal limitation on the privilege waiver, and thus ostensibly operates in perpetual force once a School District opts in to receive funding.

21.     The statute provides no appeals process for disputes over the scope of the investigation or waiver, and no protection against use of waived materials in subsequent civil litigation or criminal proceedings.

22.     The statute provides no definition of "any privilege," no guidance on whose privileges are being waived, no process for asserting that a particular privilege was not intended to be waived, and no mechanism for School Districts to withdraw from the waiver obligation.

## Criminal Penalties for Non-Compliance

23.     Section 161 of the State School Aid Act, Mich. Comp. Laws § 388.1761, provides:

> A school official or member of a board or other person who neglects or
> refuses to do or perform an act required by this act or who violates or

knowingly permits or consents to the violation of this act is guilty of a
misdemeanor, punishable by imprisonment for not more than 90 days,
or a fine of not more than $1,500.00, or both.

24.    Because Section 31aa(9) is now a requirement of "this act" for School

Districts that opt in to receive funding, school officials who in good faith assert "any

privilege"—believing it was not intended to be waived or that the waiver is

unconstitutional—face potential criminal prosecution under Mich. Comp. Laws §

388.1761.

25.    The threat of criminal prosecution creates a severe chilling effect on

school officials' willingness to assert privileges, including common law, statutory,

and constitutional privileges or seek legal counsel regarding their obligations under

Section 31aa(9).

## The Parties

26.    Time is of the essence for Plaintiffs and similarly-situated school

officials and School Districts across Michigan.

27.    The opt-in deadline for Section 31aa(2) funding is November 30,

2025—just weeks away—requiring Plaintiffs to decide immediately whether to

accept funding conditions they believe to be unconstitutional.

## Plaintiffs

28.    Plaintiffs are school superintendents, board members, and other

officials of local school districts and intermediate school districts. who face the

imminent and impossible choice between accepting desperately needed funding for

student mental health and safety programs or preserving their personal and fundamental constitutional rights.

29.    Plaintiffs are tasked with the fiduciary and statutory duty to ensure the safety and well-being of their students and staff and to act in compliance with the law. The Privilege Waiver directly and personally harms each Plaintiff by: (1) implicating their personal constitutional rights, including their Fifth Amendment right, by compelling the institutions they lead to waive privileges that protect the officials' own confidential communications; and (2) subjecting them to the threat of criminal liability under Mich. Comp. Laws § 388.1761 for "willfully" failing to comply with the vague, coercive, and undefined requirements of the Privilege Waiver, creating an unacceptable risk of arbitrary enforcement.  The Individual Plaintiffs are:

   a.    Michael Bayer, Board Member of Lakeview Public Schools [3]

   b.    John Bernia, Superintendent of Warren Consolidated Schools

   c.    Mark Blaszkowski, Superintendent of Roseville Community Schools

   d.    Andrew Brodie, Superintendent of Flat Rock Community Schools

   e.    Joseph Candela, Superintendent of Huron ISD

   f.    Daveda Colbert, Superintendent of Wayne RESA

   g.    Terry Dangerfield, Superintendent of Lincoln Park Public Schools

   h.    Mike DeVault, Superintendent of Macomb ISD

_____

[3] Unless otherwise identified, each individual is a Superintendent of the respective institution mentioned.

i.  Daniel Dombrowski, Board Member of Lakeview Public Schools

j.  Shelly DuCharme, Superintendent of Bay Arenac ISD

k.  Benjamin Edmondson, Superintendent of Romulus Community Schools

l.  Derek Fisher, Superintendent of Garden City Public Schools

m.  Mark Greathead, Superintendent of Woodhaven-Brownstown School District

n.  Kenneth Gutman, Superintendent of Oakland Schools

o.  Scott Hardy, Member, Board Trustee of Traverse City Area Public Schools

p.  Paul Hungerford, Superintendent of Gratiot-Isabella RESD

q.  Peter Kudlak, Superintendent of Van Buren Public Schools

r.  Tara Mager, Superintendent of Northwest Education Services ISD

s.  Robbyn Martin, Board Member of Lakeview Public Schools

t.  Dedrick Martin, Superintendent of Kalamazoo RESA

u.  Diane Martindale, Superintendent of Birch Run Area Schools

v.  Angie McArthur, Superintendent of Eastern Upper Peninsula ISD

w.  Jason Mellema, Superintendent of Ingham ISD

x.  Douglas Mentzer, Superintendent of Trenton Public Schools

y.  Stephen McNew, Superintendent of Monroe County ISD

z.  Robert Monroe, Superintendent of Utica Community Schools

aa.  Gregory Nyen, Superintendent of Marquette-Alger RESA

bb.  Andrea Oquist, Superintendent of Livonia Public Schools

cc.  Karl Paulson, Superintendent of Lakeview Public Schools

dd.  Todd Robinson, Superintendent of Romeo Community Schools

ee.     Paul Salah, Superintendent of Huron Valley Schools

ff.     John Searles, Superintendent of Midland County ESA

gg.     Zack Sedgwick, Superintendent of Marquette Area Public Schools

hh.     Andrew Shaw, Superintendent of Monroe Public Schools

ii.     Brenda Tenniswood, Superintendent of St. Clair County RESA

jj.     John Van Wagoner II, Superintendent of Traverse City Area Public Schools

30.     Together, Plaintiffs represent a broad cross-section of Michigan's public education system.  Plaintiffs suffer direct financial harm through the loss of critical funding to their respective School District.

31.     Each Plaintiff plays a vital role with respect to whether the School District will opt in to Section 31aa funding and, if so, in ensuring compliance with all statutory requirements, including the Privilege Waiver.

32.     Each Plaintiff is responsible for invoking and relying upon "privileges," including but not limited to attorney-client and work-product privileges, in various contexts on behalf of their respective School District.

33.     Section 31aa(9)'s Privilege Waiver does not provide Plaintiffs with clarity or adequate guidance as to what "privileges" he or she may be waiving or asked to invoke on behalf of his/her School District and staff that are purportedly waived or in what circumstances, leaving each individual Plaintiff unsure what is legal or illegal under the School Aid Act.

34. Each Plaintiff faces potential criminal prosecution under Mich. Comp. Laws § 388.1761 if he opts in to Section 31aa funding and later asserts a privilege "in the event of a mass casualty event," even if done in good faith belief that the privilege was not covered by the waiver or that the waiver is unconstitutional.

35. Plaintiffs believe they each possess a constitutional right not to be compelled to waive their individual Fifth Amendment privilege against self-incrimination as a condition of the School District receiving public funding for student services.

36. The threat of criminal prosecution, combined with the vague and overbroad nature of the Privilege Waiver requirement, has caused Plaintiffs to refrain from opting in to Section 31aa funding, thereby depriving their respective constitutions, including students, of critical mental health and safety resources.

37. Although many of the Plaintiffs here are public officials, they "are not relegated to a watered-down version of constitutional rights" on account of being public servants. *Garrity v. State of N.J.*, 385 U.S. 493, 500 (1967).

## Defendants

### Defendant State Superintendent of Public Instruction

38. Defendant State Superintendent of Public Instruction ("State Superintendent") serves as the Director of the MDE.

39. Defendant State Superintendent is a constitutional officer of the State of Michigan and serves as the principal executive officer of the MDE. The

Superintendent is responsible for leadership and general supervision over public education, including oversight, and administration and implementation of the State School Aid Act, Mich. Comp. Laws §§ 388.1601 *et seq*.

40. Defendant State Superintendent conducts official business throughout the State of Michigan, including within this Court's jurisdiction. Upon information and belief, the Superintendent performs official duties and maintains offices within the Eastern District of Michigan.

41. This Court has personal jurisdiction over Defendant Superintendent of Public Instruction in her official capacity.

42. At all times relevant to this Complaint, Defendant State Superintendent Instruction has been acting under color of state law.

## Defendant Michigan Department of Education

43. Defendant Michigan Department of Education is an executive agency of the State of Michigan and is charged with overseeing public education, administering state school funding, and implementing the State School Aid Act, including Mich. Comp. Laws § 388.1631aa. Defendant MDE conducts business throughout the State of Michigan, including within this Court's jurisdiction. Defendant MDE maintains offices and carries out agency functions within the Eastern District of Michigan.

44.     Defendant MDE is responsible for administering Section 31aa funding, including processing opt-in applications, distributing funds, reviewing expense reports, and enforcing compliance with statutory requirements.

## Defendant State of Michigan

45.     Defendant State of Michigan, through its legislative and executive branches of government, enacted Section 31aa(9) into law and is responsible for its enforcement.

46.     The State of Michigan resides, maintains offices, and conducts business within this Court's jurisdiction.

47.     This Court has personal jurisdiction over the State of Michigan.

48.     At all times relevant to this Complaint, Defendant State of Michigan has been acting under color of state law.

## Legislative History and Enactment of Section 31aa(9)

49.     Section 31aa(9) was enacted as part of Senate Bill 166 of 2025, which became Public Act 15 of 2025.

50.     Senate Bill 166 is the annual school aid appropriations bill for fiscal year 2025–26.

51.     Introduced by Senator Darrin Camilleri (D-MI) on March 18, 2025, Senate Bill 166 did not initially include the unconstitutional Privilege Waiver.

52.     On May 14, 2025 the Michigan Senate passed S.B. 166—the S-3 substitute labeled "SB-166, As Passed Senate, May 14, 2025."

53.     That "As Passed Senate" (S-3) text is the version of the omnibus school-aid bill that contains the Section 31aa amendments at issue here—specifically, the unconstitutional Privilege Waiver language requiring recipients to "affirmatively agree to waive any privilege…in the event of a mass casualty event" as a condition of receiving funding.

54.     The House then incorporated amendments to S.B. 166 much later, on October 1, 2025, although none of these amendments mentioned Section 31aa. On October 3, 2025, and in quick succession, the Senate and the House issued their respective Adopted Conference Reports, after which legislators were called to issue a final vote and passed S.B. 166.

55.     No discussion depicting the rationale for including the language in Section 31aa(9) can be found in S.B. 166's legislative history.

56.     The legislative record demonstrates that the Privilege Waiver condition was enacted as part of an omnibus appropriations bill, not through standalone legislation focused on investigatory procedure, constitutional privilege, criminal exposure, or evidentiary law.

57.     The Michigan Legislature faced a constitutional deadline of July 1, 2025, to pass the state budget but failed to reach agreement on the school aid budget for months, requiring schools to begin the 2025–26 school year without knowing how much funding they would receive from the state.

58.     The Legislature finally passed Senate Bill 166 on October 3, 2025—more than three months after the constitutional deadline and two days after the state fiscal year began on October 1, 2025.

59.     Because the Legislature missed the deadline, it was forced to pass a stopgap measure to avoid a state government shutdown before approving the final budget.

60.     The precipitous manner with which this legislation was passed is detailed and protested by Michigan House Representative Regina Weiss (D–MI-HD-6). On October 3, 2025, Representative Weiss, along with four other legislators, voted against passing the bill because she objected to "the process with which this [school] budget was developed and the fact that we were not able to review final decisions and boilerplate until after a conference report was adopted and no further changes could be made."[4]

61.     The final education budget passed the House and the Senate in the early morning hours of October 3, 2025, and was immediately sent to Governor Gretchen Whitmer.[5]

---

[4] *Weiss Votes for General State Budget, Stands Strong for Schools*, Oct. 3, 2025, available at: https://housedems.com/weiss-votes-for-general-state-budget-stands-strong-for-schools/

[5] *Gov. Whitmer Signs Education Budget with $10,000 Per-Pupil, Free Meals, Literacy Support, Educator Bonuses, Free Pre-K & Community College for All*, Oct. 7, 2025, available at: https://www.michigan.gov/whitmer/news/press-releases/2025/10/07/gov-whitmer-signs-education-budget.

62.     Governor Whitmer signed Public Act 15 of 2025 into law on October 7, 2025, with immediate effect on October 7, 2025.[6]

63.     The hasty passage of the budget bill, after months of delay and with minimal public review of the final conference committee report, prevented meaningful legislative deliberation on the far-reaching implications of the Privilege Waiver.

64.     News reports indicate that school superintendents and administrators first learned of the Privilege Waiver in mid-to-late October 2025, less than six weeks before the November 30, 2025, opt-in deadline.[7]

65.     Since the statute's enactment, school officials across Michigan have expressed concern and confusion about the scope and implications of the Privilege Waiver, with many School Districts seeking legal guidance on whether to accept the funding.

66.     The November 30, 2025, opt-in deadline creates immediate pressure on Plaintiffs and similarly-situated school officials to make a binding decision about waiving "any privilege" without adequate time to understand the full legal and financial implications.

---

[6] *Gov. Whitmer Signs Balanced, Bipartisan FY26 Budget to Fix the Damn Roads, Cut Taxes, Lower Costs, Protect Public Health & Safety*, available at: https://www.michigan.gov/whitmer/news/press-releases/2025/10/07/whitmer-signs-balanced-bipartisan-fy26-budget-to-fix-roads-cut-taxes-lower-costs

[7] Farmington board warned it may have to waive attorney–client privilege to accept Section 31aa funds, Oct. 29, 2025,  available at: CitizenPortal.ai - Farmington board warned it may have to waive attorney–client privilege to accept Section 31aa funds

## JURISDICTION AND VENUE

67.     Plaintiffs seek a declaration that the Privilege Waiver provision in Section 31aa(9) of the Michigan State School Aid Act is unconstitutional, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, by way of 42 U.S.C. § 1983. Plaintiffs further request both preliminary and permanent injunctive relief prohibiting Defendants from enforcing the Privilege Waiver provision, including as an advance condition of receiving funding under Section 31aa. *See* Fed. R. Civ. P. 65 (providing for injunctive relief).

68.     Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 2201 because this is a civil action seeking declaratory, injunctive, and other relief for the deprivation of rights secured by the United States Constitution.

69.     Defendant State of Michigan, through its legislative and executive branches of government enacted Section 31aa(9). The State of Michigan resides, maintains offices, and conducts its business within the Court's jurisdiction; and this Court has personal jurisdiction over the State of Michigan.

70.     At all times relevant to this complaint, Defendants were acting under color of law.

71.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, because it is the judicial district where Defendants conduct business, are located, and reside, and where the majority of the events and omissions giving rise to this action occurred.

## SECTION 31aa(9) of ACT 15 IS UNCONSTITUTIONAL

## COUNT I: VIOLATION OF THE FOURTEENTH AMENDMENT – VOID FOR VAGUENESS
### (42 U.S.C. § 1983)

72. Plaintiffs incorporate herein by reference the preceding allegations as if restated in full.

73. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

74. The Due Process Clause requires that laws provide fair notice of what conduct is required or prohibited and furnish clear standards to constrain enforcement. *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). A statute is void for vagueness if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.*

75. Section 31aa(9) is void for vagueness because its operative phrase— "any privilege"—is undefined, indeterminate, and provides no fair notice of what the statute requires or prohibits. The text supplies no limiting standards or cross-references to an established legal definition, leaving School Districts to speculate which privileges—evidentiary, statutory, contractual, or constitutional—must be surrendered to remain eligible for funding. This uncertainty invites arbitrary and discriminatory enforcement by permitting different officials to impose shifting, ad hoc constructions that could encompass attorney-client communications, insurer

cooperation provisions, collective-bargaining privileges, or privacy and due-process protections.

76.     By conditioning critical safety dollars on an undefined waiver of "any privilege," Section 31aa(9) operates as a coercive compliance trap that chills the exercise of protected rights without clear guidance, violating the Fourteenth Amendment. *FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 253 (2012). The Due Process Clause requires the invalidation of laws that are impermissibly vague.

### The Phrase "Any Privilege" Is Irredeemably Vague

77.     Section 31aa(9) requires recipients to "affirmatively agree to waive any privilege that may otherwise protect information from disclosure in the event of a mass casualty event."

78.     The statute does not define "any privilege."

79.     On its face, "any privilege" appears to encompass all privileges recognized under statutory law, common law, court rules, and constitutional protections, including but not limited to:

    a.     The attorney-client privilege;

    b.     The work-product doctrine;

    c.     The Fifth Amendment privilege against self-incrimination;

    d.     The school official-student privilege, Mich. Comp. Laws § 600.2165; and

    e.     Other privileges recognized under Michigan and federal law.

80.     The statute provides no guidance as to which privileges must be waived, whose privileges are at stake (the School District as an entity, the board, individual officials, employees, or all of the above), to what extent privileges must be waived, for how long the waiver applies, or in what contexts the waiver applies.

81.     School officials, including Plaintiffs, must operate without guidance as to whether the Privilege Waiver covers all investigations, civil lawsuits, Freedom of Information Act requests, the Open Meetings Act, or other unforeseen scenarios. Precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972).

82.     School officials, including Plaintiffs herein, are also left to speculate whether the Privilege Waiver applies only to privileges held by the School District as an organizational entity, or whether it also requires individual officials and employees to waive personal constitutional privileges.

83.     School officials, including Plaintiffs herein, cannot determine, for example, whether asserting attorney-client privilege during an investigation, in response to a FOIA request, or during civil litigation, would violate the Privilege Waiver, potentially subjecting them to loss of funding and criminal prosecution under Mich. Comp. Laws § 388.1761.

84.     School officials, including Plaintiffs herein, cannot determine whether asserting their Fifth Amendment privilege would violate the Privilege Waiver,

potentially subjecting them to loss of funding and criminal prosecution under Mich. Comp. Laws § 388.1761.

### The Definition of "Mass Casualty Event" Is Vague and Overbroad

85.     Section 31aa(9) conditions the privilege waiver on the occurrence of a "mass casualty event."

86.     Section 31aa(12)(a) defines "mass casualty event" to include:

(i)     "An incident resulting in significant injuries to not fewer than 3 individuals;

(ii)    An incident resulting in fatalities;

(iii)   An incident that exceeds the normal resources for emergency response available in the jurisdiction where the incident takes place;

(iv)    An incident that results in a sudden and timely surge of injured individuals necessitating emergency services."

87.     Each prong of this definition relies on elastic, subjective, and undefined terms that provide no meaningful guidance.

88.     The term "significant injuries" is undefined and overly vague. In practice, it could encompass:

a.     Three students transported to the hospital after a bus accident;

b.     Three football players who suffer concussions during a game;

c.     Three spectators treated for heat exhaustion at a track meet;

d.     Three students injured in a science lab accident;

e.     Three individuals injured in a playground incident.

f.     And a seemingly infinite number of circumstances.

89. School officials, including Plaintiffs herein, have no way to predict *ex ante* whether an incident will be deemed to involve "significant injuries" triggering the Privilege Waiver. If school officials assert a privilege that an enforcement authority later determines was waived in the event of a mass casualty incident, they face exposure to criminal prosecution and penalties under Mich. Comp. Laws § 388.1671.

90. The phrase "an incident resulting in fatalities" remains overly vague and undefined. It provides no limitation on the type of event or causal connection that triggers the statutory waiver. For instance, it could encompass a workplace accident in which a building wall collapses during maintenance work, resulting in the deaths of multiple staff members; a bleacher failure at a high-school sporting event that kills several spectators; or a transportation accident involving a school bus carrying students or employees. None of these examples involve intentional misconduct or systemic safety failures, yet each could arguably qualify as "an incident resulting in fatalities." Because the statute provides no standard for distinguishing between such accidents and the types of mass-violence events the Legislature ostensibly meant to address, school officials are left without fair notice as to when the privilege waiver is triggered, rendering the provision void for vagueness under substantive due-process principles.

91. School officials, including Plaintiffs herein, have no way to predict *ex ante* whether an incident will be deemed to "result[] in fatalities" triggering the

Privilege Waiver. If school officials invoke a privilege that is later deemed waived by an enforcement authority in the context of a mass casualty event, they may face criminal prosecution and penalties under Mich. Comp. Laws § 388.1671.

92. The phrase "exceeds the normal resources for emergency response available in the jurisdiction" is also overly vague and lacks definition. The term "normal resources" varies dramatically between jurisdictions. For example, a small rural township in Northern Michigan may have one ambulance and a volunteer fire department, while a large city in Southeast Michigan may maintain multiple full-time EMS and fire units. Whether an incident "exceeds" normal resources could depend on factors as unpredictable as the time of day, the number of simultaneous calls, the judgment of the on-site incident commander, or post-hoc determinations by state investigators reviewing the response. The statute provides no uniform benchmark or objective criteria by which school officials can determine when an incident crosses this threshold.

93. In practice, this ambiguity means that even routine or low-level incidents could trigger the Privilege Waiver and investigative obligations. For instance, a false alarm caused by a student pulling a fire alarm as a prank might prompt multiple emergency units to respond, temporarily exhausting local resources. Likewise, a student smoking in a bathroom could activate sprinklers and alarms, causing an evacuation and full fire department response. A nearby traffic accident that draws away the only available ambulance could also leave school officials

uncertain whether a concurrent, unrelated health emergency on campus "exceeded" the jurisdiction's normal resources. Because the statute provides no guidance as to what constitutes "normal resources" or what level of deployment triggers an investigation, administrators must speculate about compliance, and thereby risking either violation of the law or potential criminal exposure for failing to anticipate how investigators might later interpret the event.

94.     School officials, including Plaintiffs herein, have no way to predict *ex ante* whether an incident will be deemed to "exceed[] the normal resources" triggering the Privilege Waiver.  If school officials make a good-faith determination to invoke a privilege that could later be deemed waived by an enforcement authority in the event of a mass casualty event, they nevertheless risk criminal prosecution and penalties under Mich. Comp. Laws § 388.1671.

95.     The phrase "sudden and timely surge of injured individuals" is also overly vague and lacks definition. The statute offers no objective measure of what constitutes a "surge," how "sudden" or "timely" an increase must be, or the threshold number of injuries necessary to trigger the investigative and waiver obligations. Without further clarification, the term could apply to a wide range of incidents wholly unrelated to the types of mass-casualty events the Legislature presumably intended to address.

96.     In practice, this language could encompass a variety of accidental or health-related events that have nothing to do with violence or systemic safety

failures. A gas leak in a science laboratory or boiler room that causes multiple staff or students to seek medical evaluation could be construed as a "sudden surge" of injuries. Likewise, a cafeteria food-contamination or food-poisoning incident affecting several students at once could meet the same undefined standard. Even a playground equipment failure or chemical spill during a routine chemistry experiment could create a cluster of minor injuries that local responders treat as a "surge." Because the statute provides no limiting criteria, school officials—including the Plaintiffs here—cannot reasonably predict which events will trigger the privilege waiver or how to plan their emergency response in compliance with the law. The absence of clear standards thus renders the provision unconstitutionally vague under substantive due process principles.

## Vagueness Is Compounded by Criminal Penalties

97.    The constitutional defect is compounded by the Act's criminal backdrop. Mich. Comp. Laws § 388.1761 makes it a misdemeanor for any public officer or employee who "willfully neglects or refuses to do or perform an act required by this act." That provision attaches potential criminal liability to the very uncertainty created by Section 31aa(9). A superintendent or administrator who, in good faith, asserts a privilege later deemed "waived" by the State risks prosecution for failing to perform an act "required" under the Act.

98.    When vague statutory commands carry penal consequences, due process demands far greater clarity. As the Supreme Court has long held, a statute is

void for vagueness if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The void-for-vagueness doctrine ensures that laws give fair notice of what conduct is required and do not invite arbitrary enforcement. *Grayned*, 408 U.S. at 108–09; *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). This standard applies with particular force where a statute chills constitutionally protected activity. *Grayned*, 408 U.S. at 109.

99.     The same principle applies to statutes, like Section 31aa(9), that expose public officials to criminal sanction for undefined obligations. In *Kolender v. Lawson*, the U.S. Supreme Court invalidated a statute that vested "virtually complete discretion" in enforcement officials without clear standards to guide their decisions, emphasizing that such ambiguity invites arbitrary and discriminatory enforcement. 461 U.S. 352, 357–58 (1983); *see also City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999) (requiring "minimal guidelines to govern law enforcement"). The Sixth Circuit has similarly stressed that "providing minimal guidelines to govern enforcement constitutes the more important aspect of the vagueness doctrine." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999). Here, the undefined requirement to waive "any privilege" upon the occurrence of a vaguely defined "mass casualty event," combined with the threat of misdemeanor prosecution under Mich. Comp. Laws § 388.1761, offers no meaningful guidance to

school officials. The statute thus fails both prongs of the vagueness inquiry: it denies fair notice and authorizes arbitrary enforcement.

100.   School officials, including Plaintiffs herein, cannot fairly predict when asserting a privilege is lawful and when it constitutes a crime.

101.   The combination of undefined terms, open-ended enforcement discretion, and criminal penalties creates precisely the type of arbitrary administration the Due Process Clause forbids.

102.   Section 31aa(9)'s vagueness creates a severe chilling effect: school officials will be deterred from seeking candid legal advice, conducting frank after-action reviews, or engaging in sensitive discussions about safety protocols for fear that such communications could later be deemed subject to the Privilege Waiver.

103.   Counsel will draft fewer candid legal memoranda; safety teams will avoid frank assessments of vulnerabilities; and school boards will steer away from difficult discussions. This chilling effect undermines the very safety and preparedness goals the statute purports to advance.

104.   Section 31aa(9) provides no fair notice of what conduct is required, vests unbounded discretion in investigators and prosecutors, and chills constitutionally protected activity.

105.   Accordingly, Section 31aa(9) is void for vagueness in violation of the Fourteenth Amendment to the United States Constitution.

106.   Plaintiffs are suffering and will continue to suffer immediate and irreparable harm because they cannot ascertain what conduct Section 31aa(9) requires, what privileges must be waived, or when assertion of a privilege might constitute a crime.

107.   Plaintiffs are entitled to preliminary injunctive relief because all four factors strongly favor issuance of an injunction: (1) Plaintiffs are likely to succeed on the merits of their constitutional claims; (2) they will suffer immediate and irreparable injury absent an injunction; (3) no substantial harm will befall Defendants or others from the preservation of the status quo; and (4) the public interest strongly supports enforcement of constitutional guarantees. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

108.   The likelihood of success is the most important factor in the analysis. *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 386 (6th Cir. 2023). Section 31aa(9) is void for vagueness under the Fourteenth Amendment, coercive under the unconstitutional conditions doctrine, and unenforceable under basic principles of due process. The provision's command that districts waive "any privilege" upon a "mass casualty event" is so indeterminate that no reasonable official can discern which privileges must be waived, when the waiver applies, or what conduct is criminalized. The combination of undefined statutory obligations and potential misdemeanor liability under Mich. Comp. Laws § 388.1761 offends the due process requirement of fair notice and enables arbitrary enforcement. *Grayned v. City of*

*Rockford*, 408 U.S. 104, 108–09 (1972), and *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983).

109.   Plaintiffs are suffering and will continue to suffer immediate and irreparable harm because they cannot ascertain what conduct Section 31aa(9) requires, what privileges must be waived, or when assertion of a privilege might constitute a crime. The uncertainty itself chills the ability of school officials to seek and receive candid legal advice, to communicate freely about safety preparedness, or to conduct after-action reviews. The harm is irreparable because once privileged materials are disclosed or destroyed to comply with a perceived duty, confidentiality can never be restored. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

110.   The harm is compounded by the imminent November 30, 2025 opt-in deadline. Without injunctive relief, Plaintiffs must either (a) accept the funds and expose themselves to the statute's undefined obligations and potential criminal penalties or (b) decline funding and lose vital resources for student mental health and school safety.

111.   The balance of equities also favors Plaintiffs. Enjoining enforcement of the waiver provision will maintain the status quo and prevent constitutional violations, while imposing no harm on Defendants. If the State ultimately prevails, it can reimpose the waiver requirement after judicial clarification. But if the waiver

is enforced now and later found unconstitutional, the loss of privilege and exposure of confidential communications will be permanent and irreparable. Courts have repeatedly held that "no substantial harm to others can be said to inhere in its enjoinment" where plaintiffs demonstrate a substantial likelihood of success on constitutional claims. *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001).

112. The public interest overwhelmingly supports injunctive relief. Protecting constitutional rights and ensuring lawful governance are in the public interest. *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Moreover, maintaining uninterrupted funding for school safety and student mental health serves a paramount public purpose. Temporarily enjoining an ambiguous waiver provision preserves both interests: it safeguards constitutional protections while allowing the State to continue supporting students without coercing unlawful compliance.

113. Plaintiffs have no adequate remedy at law.

114. Each factor weighs decisively in favor of preliminary injunctive relief. Plaintiffs therefore respectfully request that this Court enjoin enforcement of Section 31aa(9)'s privilege-waiver pending final adjudication.

115. All persons violating the Fourteenth Amendment under color of state law are liable under 42 U.S.C. § 1983.

## COUNT II: VIOLATION OF THE FIFTH AND FOURTEENTH
## AMENDMENTS – UNCONSTITUTIONAL CONDITIONS DOCTRINE
## (42 U.S.C. § 1983)

116.    Plaintiffs incorporate herein by reference the preceding allegations as if fully stated herein.

117.    The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."

118.    The Fifth Amendment privilege against self-incrimination applies to the states through the Fourteenth Amendment's Due Process Clause. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

119.    The privilege against self-incrimination is a fundamental constitutional right that protects individuals from being compelled to provide testimony or evidence that could be used against them in criminal proceedings.

120.    Under the "unconstitutional conditions doctrine," the government may not condition the receipt of a public benefit on the surrender of a constitutional right. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). As the Supreme Court has held, the government cannot use benefits "to produce a result which it could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526 (1958).

121.    Section 31aa(9) operates as an unconstitutional condition by requiring School Districts and school officials to "affirmatively agree to waive any privilege" as a precondition to receiving critical public funding.

122.   The phrase "any privilege" in Section 31aa(9) includes, at minimum, the Fifth Amendment privilege against self-incrimination held by individual school officials.

123.   School Districts cannot waive individual school officials' personal Fifth Amendment privileges. *Paramount Pictures Corp. v. Miskinis*, 418 Mich. 708, 715 (1984) ("The privilege against self-incrimination is a personal privilege."). Yet Section 31aa(9) requires School Districts to agree to waive "any privilege" without specifying whose privileges are being waived or whether individual officials retain the right to assert their personal Fifth Amendment privileges.

124.   School officials like Plaintiffs here reasonably understand Section 31aa(9) to require them to waive their personal Fifth Amendment privileges as a condition of their School District receiving funding.

125.   The funding at stake is substantial—potentially hundreds of thousands or millions of dollars for student mental health and safety services—making the loss of funding a significant economic penalty.

126.   The choice presented to Plaintiffs is not voluntary: they can either accept critical funding needed for student services while surrendering constitutional protections, or they can preserve constitutional rights while depriving students of needed mental health and safety resources.

127.   This Hobson's choice constitutes the precise type of economic coercion the unconstitutional conditions doctrine forbids.

128.   Michigan could not directly command school officials to waive their Fifth Amendment privileges. It cannot achieve that result indirectly by conditioning public funding on such a waiver.

129.   Section 31aa(9) lacks any compelling governmental interest that would justify conditioning funding on waiver of constitutional privileges.

130.   While ensuring accountability and transparency following school tragedies is a legitimate governmental interest, that interest does not justify prospective waiver of fundamental constitutional rights, particularly where less restrictive alternatives exist (such as conducting investigations with appropriate respect for constitutional privileges and allowing officials to assert privileges on a case-by-case basis during investigations).

131.   Even if a compelling interest existed, Section 31aa(9) is not narrowly tailored because it requires a blanket, perpetual waiver of "any privilege" without temporal limitation, without definition of scope, and without procedural protections.

132.   By conditioning Section 31aa funding on agreement to waive "any privilege," including the Fifth Amendment privilege against self-incrimination, Section 31aa(9) violates the Fifth and Fourteenth Amendments to the United States Constitution.

133.   Plaintiffs are suffering and will continue to suffer immediate and irreparable harm as a result of Section 31aa(9)'s unconstitutionality because they are

forced to choose between receiving critical public funding for student services and surrendering fundamental constitutional protections.

134.   Plaintiffs have no adequate remedy at law.

135.   All persons violating the Fifth and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

136.   No circumstances exist in which the enforcement of Section 31aa(9) would be constitutional.

137.   Plaintiffs have no adequate remedy at law and, thus, require declaratory and preliminary and permanent injunctive relief.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.   Declare that the "waive any privilege" requirement in Mich. Comp. Laws § 388.1631aa(9) (the Privilege Waiver) is unconstitutional, both on its face and as applied to Plaintiffs, and sever it from the statute; and enjoin Defendants from enforcing the Privilege Waiver.

B.   Declare that the Privilege Waiver provision in Section 31aa(9) violates the Fifth and Fourteenth Amendments to the United States Constitution by conditioning receipt of public funding on waiver of the privilege against self-incrimination, in violation of the unconstitutional conditions doctrine;

C.  Declare that the Privilege Waiver provision in Section 31aa(9) violates the Fourteenth Amendment to the United States Constitution because it is void for vagueness;

D.  Declare that, to the extent the Court finds the Privilege Waiver in Section 31aa(9) unconstitutional, the subsection shall be severed from the remainder of the State School Aid Act;

E.  Preliminarily and permanently enjoin Defendants, their officers, agents, employees, and all persons acting in concert with them, from enforcing the Privilege Waiver provision in Section 31aa(9) of the State School Aid Act;

F.  Preliminarily and permanently enjoin Defendants from denying Section 31aa funding to school districts and ISDs based on their refusal to agree to the Privilege Waiver required by Section 31aa(9);

G.  Order the Michigan Department of Education to accept and process Section 31aa opt-in applications or submissions, after November 30, 2025, from any School District that did not submit an application or submission, without requiring proof of prior intent, board resolution, attestation, or other eligibility precondition related to the Privilege Waiver, if this Court grants declaratory or other merits relief invalidating or enjoining,

preliminarily or permanently, the Privilege Waiver. The Court should further order that such School Districts be deemed timely applicants as a matter of law, that access to funding shall not be conditioned on prior participation, articulated rationale, or administrative certification of motive for non-participation, and that the Court retain jurisdiction to enforce compliance and prevent administrative or procedural barriers inconsistent with this relief.

H.  Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

I.  Grant such other and further relief as the Court deems just, equitable, and appropriate.

Dated: November 12, 2025                Respectfully submitted,

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)
Ahmad A. Chehab (P75560)
Eftiola Greco (P83874)
Elizabeth Munoz-Smith (P87945)
MILLER, CANFIELD, PADDOCK AND STONE,
P.L.C.
*Attorneys for Plaintiffs*
123 W. Allegan St., Suite 200
Lansing MI 48933
eldridge@millercanfield.com
chehab@millercanfield.com
greco@millercanfield.com
munoz-smith@millercanfield.com

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____     Executed on: _11–12–25_
Mike DeVault, Superintendent
Macomb Intermediate School District


_____     Executed on:_____
Gregory Nyen, Superintendent
Marquette-Alger RESA


_____     Executed on:_____
John Searles, Superintendent
Midland County ESA


_____     Executed on:_____
Stephen McNew, Superintendent
Monroe County Intermediate School
District

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Dedrick Martin, Superintendent
Kalamazoo RESA

Executed on: 11-12-25

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.


_____          Executed on:_____
Mike DeVault, Superintendent
Macomb Intermediate School District


_____          Executed on:_____
Gregory Nyen, Superintendent
Marquette-Alger RESA


_____          Executed on:_____
John Searles, Superintendent
Midland County ESA


_____          Executed on: 11 12 2025
Stephen McNew, Superintendent
Monroe County Intermediate School
District

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____     Executed on:_____
Douglas Mentzer, Superintendent
Trenton Public Schools

_____     Executed on:_____
Robert Monroe, Superintendent
Utica Community Schools

_____     Executed on:_____
Peter Kudlak, Superintendent
Van Buren Public Schools

_____     Executed on: November 12, 2025
John Bernia, Superintendent
Warren Consolidated Schools

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Executed on: _____

_____
Mark Blaszkowski, Superintendent
Roseville Community Schools

Executed on: _____

_____
Brenda Tenniswood, Superintendent
St. Clair County RESA

Executed on: _____

_____
Scott Hardy, Board Trustee
Traverse City Area Public Schools

Executed on: 11/10/25

_____
John Van Wagoner II, Superintendent
Traverse City Area Public Schools

Nichole Thoma
NOTARY PUBLIC
COUNTY OF CLINTON
My Commission Expires
11/01/2030
Acting in the County of
Eaton
STATE OF MICHIGAN

Nichole Thoma
11/12/2025

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____          Executed on:_____
Tara Mager, Superintendent
Northwest Education Services


_____          Executed on:_____
Rachel Eichhorst, Board President
Romeo Community Schools


_____          Executed on:_____
Todd Robinson, Superintendent
Romeo Community Schools

*Benjamin Edmond*                          Executed on: 11/12/25
Benjamin Edmondson, Superintendent
Romulus Community Schools

EVE CAMILLERI
Notary Public - State of Michigan
County of Wayne
My Commission Expires Sep 10, 2026
Acting in the County of Wayne

Eve Camilleri
11/12/25

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____     Executed on: _11 - 12 - 25_____
Alan Latosz, Superintendent
Algonac Community Schools


_____     Executed on:_____
Shelly DuCharme, Superintendent
Bay Arenac ISD


_____     Executed on:_____
Angie McArthur, Superintendent
Eastern Upper Peninsula Intermediate
School District


_____     Executed on:_____
Derek Fisher, Superintendent
Garden City Public Schools

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____        Executed on:_____
Douglas Mentzer, Superintendent
Trenton Public Schools

_____        Executed on: November 12, 2025
Robert Monroe, Superintendent
Utica Community Schools


_____        Executed on:_____
Peter Kudlak, Superintendent
Van Buren Public Schools


_____        Executed on:_____
John Bernia, Superintendent
Warren Consolidated Schools

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Signed by:

*Diane Martindale*

7C1867BE0362417...

Diane Martindale, Superintendent
Birch Run Area Schools

Executed on: 11/12/2025 | 9:56 AM PST

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_Daveda J. Colbert_

Daveda Colbert, Superintendent
Wayne RESA

Executed on: _11|12|2025_

_____

Mark Greathead, Superintendent
Woodhaven-Brownstown School District

Executed on: _____

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____    Executed on:_____
Mike DeVault, Superintendent
Macomb Intermediate School District


_____    Executed on:_____
Gregory Nyen, Superintendent
Marquette-Alger RESA


_____    Executed on: _Nov. 12, 2025_
John Searles, Superintendent
Midland County ESA


_____    Executed on:_____
Stephen McNew, Superintendent
Monroe County Intermediate School
District


Krystal Kozuch
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF Midland
My Commission Expires January 12, 2027
Acting in the County of Midland

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____           Executed on:_____
Paul Hungerford, Superintendent
Gratiot-Isabella RESD


_____           Executed on:_____
Paul Salah, Superintendent
Huron Valley Schools


_____           Executed on: November 12, 2025
Jason Mellema, Superintendent
Ingham Intermediate School District


_____           Executed on:_____
Terry Dangerfield, Superintendent
Lincoln Park Public Schools


_____           Executed on:_____
Gary Kinzer, Superintendent
Mason Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____
Alan Latosz, Superintendent
Algonac Community Schools

Executed on:_____

*Shelly DuCharme*
_____
Shelly DuCharme, Superintendent
Bay Arenac ISD

Executed on: 11/12/25_____

_____
Angie McArthur, Superintendent
Eastern Upper Peninsula Intermediate
School District

Executed on:_____

_____
Derek Fisher, Superintendent
Garden City Public Schools

Executed on:_____

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____    Executed on:_____
Paul Hungerford, Superintendent
Gratiot-Isabella RESD

_____    Executed on:_____
Paul Salah, Superintendent
Huron Valley Schools

_____    Executed on:_____
Jason Mellema, Superintendent
Ingham Intermediate School District

_____    Executed on:_____
Terry Dangerfield, Superintendent
Lincoln Park Public Schools

_____    Executed on:_____
Gary Kinzer, Superintendent
Mason Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____     Executed on:_____
Mike DeVault, Superintendent
Macomb Intermediate School District


_____     Executed on:_____
Gregory Nyen, Superintendent
Marquette-Alger RESA


_____     Executed on:_____
John Searles, Superintendent
Midland County ESA


_____     Executed on:_____
Stephen McNew, Superintendent
Monroe County Intermediate School
District

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____    Executed on:_____
Andrew Shaw, Superintendent
Monroe Public Schools


_____    Executed on:_____
Karl Paulson, Superintendent
Lakeview Public Schools


_____    Executed on:_____
Daniel Dombrowski, President
Lakeview Public Schools


_____    Executed on:_____
Robbyn Martin, Vice-President
Lakeview Public Schools


_____    Executed on:_____
Michael Bayer, Treasurer
Lakeview Public Schools

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____          Executed on:_____
Tara Mager, Superintendent
Northwest Education Services


_____          Executed on:_____
Rachel Eichhorst, Board President
Romeo Community Schools


_____          Executed on:_____
Todd Robinson, Superintendent
Romeo Community Schools


_____          Executed on:_____
Benjamin Edmondson, Superintendent
Romulus Community Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Executed on:_____

_____
Mark Blaszkowski, Superintendent
Roseville Community Schools

Executed on:_____

_____
Brenda Tenniswood, Superintendent
St. Clair County RESA

Executed on:_____

_____
Scott Hardy, Board Trustee
Traverse City Area Public Schools

Executed on:_____

_____
John Van Wagoner II, Superintendent
Traverse City Area Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____    Executed on:_____
Douglas Mentzer, Superintendent
Trenton Public Schools


_____    Executed on:_____
Robert Monroe, Superintendent
Utica Community Schools


_____    Executed on:_____
Peter Kudlak, Superintendent
Van Buren Public Schools


_____    Executed on:_____
John Bernia, Superintendent
Warren Consolidated Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____   Executed on:_____
Daveda Colbert, Superintendent
Wayne RESA


_____   Executed on:_____
Mark Greathead, Superintendent
Woodhaven-Brownstown School
District

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____  Executed on: _Nov. 12, 2025_
Andrew Shaw, Superintendent
Monroe Public Schools

_____  Executed on:_____
Karl Paulson, Superintendent
Lakeview Public Schools

_____  Executed on:_____
Daniel Dombrowski, President
Lakeview Public Schools

_____  Executed on:_____
Robbyn Martin, Vice-President
Lakeview Public Schools

_____  Executed on:_____
Michael Bayer, Treasurer
Lakeview Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Executed on:_____

_____
Mark Blaszkowski, Superintendent
Roseville Community Schools

Executed on:_____

_____
Brenda Tenniswood, Superintendent
St. Clair County RESA

Executed on:___11/12/25_____

_____
Scott Hardy, Board Trustee
Traverse City Area Public Schools

Executed on:_____

_____
John Van Wagoner II, Superintendent
Traverse City Area Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_Tara Mager_
Tara Mager, Superintendent
Northwest Education Services

Executed on: _11/12/2025_


_____
Rachel Eichhorst, Board President
Romeo Community Schools

Executed on:_____


_____
Todd Robinson, Superintendent
Romeo Community Schools

Executed on:_____


_____
Benjamin Edmondson, Superintendent
Romulus Community Schools

Executed on:_____

**VERIFICATION**

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.

Executed on: 11/12/25

Mark Blaszkowski, Superintendent
Roseville Community Schools

Executed on:_____

Brenda Tenniswood, Superintendent
St. Clair County RESA

Executed on:_____

Scott Hardy, Board Trustee
Traverse City Area Public Schools

Executed on:_____

John Van Wagoner II, Superintendent
Traverse City Area Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Kenneth Gutman, Superintendent
Oakland Schools

Executed on: November 12, 2025

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____  Executed on:_____
Alan Latosz, Superintendent
Algonac Community Schools

_____  Executed on:_____
Shelly DuCharme, Superintendent
Bay Arenac ISD

_____  Executed on:_____
Angie McArthur, Superintendent
Eastern Upper Peninsula Intermediate
School District

_____  Executed on:_____
Derek Fisher, Superintendent
Garden City Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____        Executed on: _11-12-25_____
Paul Hungerford, Superintendent
Gratiot-Isabella RESD


_____        Executed on:_____
Paul Salah, Superintendent
Huron Valley Schools


_____        Executed on:_____
Jason Mellema, Superintendent
Ingham Intermediate School District


_____        Executed on:_____
Terry Dangerfield, Superintendent
Lincoln Park Public Schools


_____        Executed on:_____
Gary Kinzer, Superintendent
Mason Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____      Executed on:_____
Mike DeVault, Superintendent
Macomb Intermediate School District


_____      Executed on:_____
Gregory Nyen, Superintendent
Marquette-Alger RESA


_____      Executed on:_____
John Searles, Superintendent
Midland County ESA


_____      Executed on:_____
Stephen McNew, Superintendent
Monroe County Intermediate School
District

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____     Executed on:_____
Andrew Shaw, Superintendent
Monroe Public Schools


_____     Executed on:_____
Karl Paulson, Superintendent
Lakeview Public Schools


_____     Executed on:_____
Daniel Dombrowski, President
Lakeview Public Schools


_____     Executed on:_____
Robbyn Martin, Vice-President
Lakeview Public Schools


_____     Executed on:_____
Michael Bayer, Treasurer
Lakeview Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____          Executed on:_____

Tara Mager, Superintendent
Northwest Education Services


_____          Executed on:_____

Rachel Eichhorst, Board President
Romeo Community Schools


_____          Executed on:_____

Todd Robinson, Superintendent
Romeo Community Schools


_____          Executed on:_____

Benjamin Edmondson, Superintendent
Romulus Community Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

Executed on:_____

_____
Mark Blaszkowski, Superintendent
Roseville Community Schools

Executed on:_____

_____
Brenda Tenniswood, Superintendent
St. Clair County RESA

Executed on:_____

_____
Scott Hardy, Board Trustee
Traverse City Area Public Schools

Executed on:_____

_____
John Van Wagoner II, Superintendent
Traverse City Area Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____       Executed on:_____
Douglas Mentzer, Superintendent
Trenton Public Schools


_____       Executed on:_____
Robert Monroe, Superintendent
Utica Community Schools


_____       Executed on:_____
Peter Kudlak, Superintendent
Van Buren Public Schools


_____       Executed on:_____
John Bernia, Superintendent
Warren Consolidated Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


_____      Executed on:_____
Daveda Colbert, Superintendent
Wayne RESA


_____      Executed on:_____
Mark Greathead, Superintendent
Woodhaven-Brownstown School
District

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____  Executed on:_____
Alan Latosz, Superintendent
Algonac Community Schools


_____  Executed on:_____
Shelly DuCharme, Superintendent
Bay Arenac ISD

_____  Executed on: _11/12/2025_
Angie McArthur, Superintendent
Eastern Upper Peninsula Intermediate
School District


_____  Executed on:_____
Derek Fisher, Superintendent
Garden City Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____

Douglas Mentzer, Superintendent
Trenton Public Schools

Executed on: _November 12, 2025_

_____

Robert Monroe, Superintendent
Utica Community Schools

Executed on:_____

_____

Peter Kudlak, Superintendent
Van Buren Public Schools

Executed on:_____

_____

John Bernia, Superintendent
Warren Consolidated Schools

Executed on:_____

JULIE A. DRABCZYK
Notary Public, State of Michigan
County of Wayne
My Commission Expires Jun. 02, 2029
Acting in the County of _Wayne_

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.

Executed on:___11·12·25___

Andrea Oquist, Superintendent
Livonia Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.

Executed on:_____

_____
Mark Blaszkowski, Superintendent
Roseville Community Schools

*Brenda Tenniswood*                                    Executed on: November 12, 2025

_____
Brenda Tenniswood, Superintendent
St. Clair County RESA

Executed on:_____

_____
Scott Hardy, Board Trustee
Traverse City Area Public Schools

Executed on:_____

_____
John Van Wagoner II, Superintendent
Traverse City Area Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____
Andrew Brodie, Superintendent
Flat Rock Community Schools

Executed on: 11.12.2025
_____

# VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____

Douglas Mentzer, Superintendent
Trenton Public Schools

Executed on:_____

_____

Robert Monroe, Superintendent
Utica Community Schools

Executed on:_____

_____

Peter Kudlak, Superintendent
Van Buren Public Schools

Executed on: 11-12-2025

_____

John Bernia, Superintendent
Warren Consolidated Schools

Executed on:_____

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____       Executed on:_____
Alan Latosz, Superintendent
Algonac Community Schools


_____       Executed on:_____
Shelly DuCharme, Superintendent
Bay Arenac ISD


_____       Executed on:_____
Angie McArthur, Superintendent
Eastern Upper Peninsula Intermediate
School District

_____       Executed on: 11/12/2025
Derek Fisher, Superintendent
Garden City Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.


Joseph Candela, Superintendent
Huron ISD

Executed on: 11/12/45

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____
Mike DeVault, Superintendent
Macomb Intermediate School District

Executed on:_____

_____
Gregory Nyen, Superintendent
Marquette-Alger RESA

Executed on: 11.12.2025

_____
John Searles, Superintendent
Midland County ESA

Executed on:_____

_____
Stephen McNew, Superintendent
Monroe County Intermediate School
District

Executed on:_____

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.


_____          Executed on:_____

Paul Hungerford, Superintendent
Gratiot-Isabella RESD


_____          Executed on:_____

Paul Salah, Superintendent
Huron Valley Schools


_____          Executed on:_____

Jason Mellema, Superintendent
Ingham Intermediate School District


_____          Executed on:___11-12-25_____

Terry Dangerfield, Superintendent
Lincoln Park Public Schools


_____          Executed on:_____

Gary Kinzer, Superintendent
Mason Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.

_____   Executed on:_____
Paul Hungerford, Superintendent
Gratiot-Isabella RESD

_____   Executed on: 11- 12-25
Paul Salah, Superintendent
Huron Valley Schools

_____   Executed on:_____
Jason Mellema, Superintendent
Ingham Intermediate School District

_____   Executed on:_____
Terry Dangerfield, Superintendent
Lincoln Park Public Schools

_____   Executed on:_____
Gary Kinzer, Superintendent
Mason Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____    Executed on:_____

Daveda Colbert, Superintendent
Wayne RESA

_____    Executed on: 11/12/25

Mark Greathead, Superintendent
Woodhaven-Brownstown School
District

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.


_____          Executed on: __11- 12 -2025__
Zack Sedgwick, Superintendent
Marquette Area Public Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to 28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury that the foregoing is true and correct.

_____    Executed on:_____
Tara Mager, Superintendent
Northwest Education Services


_____    Executed on:_____
Rachel Eichhorst, Board President
Romeo Community Schools

_____    Executed on: 11 - 12 - 25
Todd Robinson, Superintendent
Romeo Community Schools


_____    Executed on:_____
Benjamin Edmondson, Superintendent
Romulus Community Schools

## VERIFICATION

I am one of the Plaintiffs in this action. I have read the foregoing Verified

Complaint for Emergency Declaratory, Injunctive, and Other Relief, and pursuant to

28 U.S.C. § 1746, I, the undersigned, declare and verify under penalty of perjury

that the foregoing is true and correct.


_____          Executed on:_____

Andrew Shaw, Superintendent
Monroe Public Schools


_____          Executed on:___11/12/2025___

Karl Paulson, Superintendent
Lakeview Public Schools


_____          Executed on:_____

Daniel Dombrowski, President
Lakeview Public Schools


_____          Executed on:_____

Robbyn Martin, Vice-President
Lakeview Public Schools


_____          Executed on:_____

Michael Bayer, Treasurer
Lakeview Public Schools

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system and sent the same to counsel for Michigan Department of Education via email.  For the purpose of immediate and actual notice, I will have caused the foregoing document to hand delivered on November 13, 2025, to Defendants as follows:

**Michigan Department of Education:**
608 West Allegan Street
Lansing, MI 48909

**State Superintendent for Public Instruction:**
Michigan Department of Education
608 West Allegan Street
Lansing, MI 48933

I will further have caused the foregoing document to be sent via U.S. Mail to Defendant the Attorney General at:

**State of Michigan:**
Michigan Attorney General
P.O. Box 30212
Lansing, MI 48909

*Scott R. Eldridge*
Scott R. Eldridge (P66452)